IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| **JANICE PATRICIA HILDRETH,** | ) | |
| | ) | Bankruptcy No. 09-00293 |
| **Debtor.** | ) | |

**RULING ON MOTION FOR COMPROMISE OR SETTLEMENT OF
CONTROVERSY (ECF DOC. # 40)**

This matter comes before the Court on Trustee's Motion for Compromise or Settlement of Controversy. The Court held a hearing on the Motion in Sioux City, Iowa. Trustee, Wil L. Forker, appeared on his own behalf. Attorney Tod Deck appeared on behalf of Debtor Janice Hildreth. Attorney Donald Moldstad appeared on behalf of Marvin Hildreth. The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**STATEMENT OF THE CASE**

In February 2009, Janice Hildreth filed a voluntary Chapter 7 petition. Schedule B of Debtor's filing lists an asset: an uncollected divorce settlement valued at $80,000.00. (Schedule B, ECF Doc. No. 1, at 18.) Debtor has not received any portion of the settlement payments from her ex-husband, Marvin Hildreth. The payments were intended to buy out her interest in the marital real estate and business. Trustee proposes to compromise the claim by accepting a lump-sum settlement in the amount of $20,000.00. Debtor objects to Trustee's

Motion to Compromise arguing that Trustee would likely be successful if he litigated the claim and pursued collection. Debtor argues there would likely be a surplus—after unsecured creditors are paid—to which she would be entitled. Because the Court believes that Trustee would have difficulty collecting any potential judgment obtained and that the compromise is fair, Trustee's Motion for Compromise is granted.

## BACKGROUND

Debtor filed a voluntary Chapter 7 petition on February 18, 2009. On Schedule B, when listing her personal property, Debtor lists a divorce settlement in the amount of $80,000.00 as an asset. Schedule E lists unsecured claims in the amount of $106,901.60. Debtor listed her divorce settlement as an exempt asset.

On March 19, 2009, Trustee filed an objection to the exemption claim. Trustee argued: "Under the Debtor's Stipulated Dissolution Settlement Agreement Paragraph 19.2 it states that 'Husband shall pay to the Wife the sum of $80,000.00 for her equity interest in the business properties.['] Therefore, this settlement is a property settlement and is not exempt under the Iowa Statutes and should be disallowed." (Obj. to Exempt., ECF Doc. No. 6.) No response to the objection was filed and the objection was sustained on April 23, 2009.[1]

---

[1] This action was previously before Judge Edmonds. Upon Judge Edmonds' retirement the action was reassigned to this Court.

2

Debtor was granted a discharge under 11 U.S.C. § 727 on July 22, 2009.  On December 1, 2009, Trustee filed a Motion for Compromise or Settlement of Controversy with Marvin Hildreth.  In support of the Motion to Compromise, Trustee cited to Debtor's June 17, 2008 dissolution settlement.  The settlement stated in relevant part:

> In exchange for the Wife's interest in said business property, the Husband shall pay to the Wife the sum of $85,000.00 for her equity interest in the business properties.  Judgment shall enter against the Husband and in favor of the Wife for the $85,000.00 buyout which shall be paid in seven (7) annual installments of $10,000.00, plus interest, as set forth in the attached amortization schedule marked Exhibit B, and a final balloon payment of $30,000.00 on June 1, 2016.  All payments shall be paid through the office of the Clerk of District Court.

(12/1/09 Mt. Compromise, ECF Doc. No. 23.)  Trustee proposed to compromise the claim by accepting a lump-sum of $30,000.00 for final settlement of the claim.

On December 18, 2009, Debtor filed an objection to the Motion.  The Court held a hearing on March 2, 2010.  During the hearing, the issue of whether Debtor had standing to object to the Motion was raised.  After taking evidence from the parties, the Court issued a bench ruling denying the Motion, stating in part:

> I think it's questionable that she [Debtor] has standing; it's a very close call and I don't know that she should be able to drive whether this case is settled, but I'm not satisfied in the proposal here. I think that's what this does is, this is Mr. Molstad saying this is a bankruptcy threat, but we don't know what the bankruptcy threat is.  It hasn't been adequately calculated.  I think basically, from the way people are reading this dissolution decree, is that she has some security interest which would benefit the Trustee and therefore he wouldn't just be

3

> treated as . . . an unsecured creditor in Mr. Hildreth['s bankruptcy]. He would be in a Chapter 13, entitled over a five year plan, to collect the value of the equity in those pieces of property, unless they were somehow crammed down in some way and had no value.  There may be some treatment of the Trustee as a secured creditor and some as an unsecured creditor.  I cannot tell from this case what the risk is to the Trustee and therefore the unsecured creditors in this case of what he would recover if Mr. Hildreth went through with his threat.  But it seems to me the analysis of this has been insufficient.  And I am particularly bothered that this would be knocked down from eighty-five to thirty with no certified, verified, or balance sheet and income statement by Mr. Hildreth under oath.  I would not accept this offer on the threat of bankruptcy, and I am putting myself in the position of the Trustee, just because he wants to threaten bankruptcy.  Bankruptcy is no picnic and therefore I think this is a game of chicken.  Fine, but I am going to call Mr. Hildreth on it and it's without prejudice to Mr. Forker coming back with maybe a little better settlement offer, something, but with the facts and figures to back it up. . . .  I don't know if this is a good deal, and I have to find it's a good deal, has to be a reasonable deal, and the evidence is insufficient so to find so the motion to compromise is denied.

(Mar. 2, 2010 Hearing Transcript.)

Approximately one year later, on April 14, 2011, Trustee filed a status report indicating that he was "currently in negotiations with Don Molstad [attorney for Mr. Hildreth] regarding a settlement offer in an attempt to resolve this matter." (4/14/11 Status, ECF Doc. No. 36.)  Trustee filed a second status report on March 8, 2012.  This status report provided in part:

> The Trustee had a previous offer of $30,000.00 in December of 2009 to settle the property settlement claim debtor has against her former spouse and the Court rejected the settlement offer.  Since that time, the Trustee has attempted to negotiate a different settlement in this matter.  However, in the summer of 2011, among the assets of Marvin Hildreth is a campground in Monona County along the Missouri

4

> River, which sustained major damage due to the flooding along the river such that there was no income for the campground during that time and the campground has been turned into sand dunes. The undersigned has received a new offer to settle this matter and it will be noticing out the same.

(3/8/12 Status, ECF Doc. No. 38.)

On March 9, 2012, Trustee filed a Motion for Compromise or Settlement of Controversy. The Motion provided in part:

> A previous Notice and Motion to Compromise was filed with the court on December 1, 2009 proposing to settle the matter in the amount of $30,000.00. The compromise was rejected by the Court. Marvin Hildreth's financial situation has deteriorated since that last offer and he can now only offer $20,000.00 to settle this matter. The Trustee proposes to compromise the claim by accepting a lump sum settlement in the amount of $20,000.00 from Marvin Hildreth in final settlement of the divorce settlement. The Trustee believes this is a fair and reasonable settlement for the following reasons:
> 1. The principal asset of Marvin Hildreth is a campground located in Monona County along the river and the Trustee has viewed recent pictures of the property and it was underwater during the floods of 2011 and when the water receded it left nothing but sand and dead or dying trees.
> 2. Mr. Hildreth has also incurred at least six (6) judgment liens at this time which adversely affects the real estate.

(Mt. Compromise, ECF Doc. No. 40.)

Debtor objected to the proposed compromise arguing in part:

> 3. That the proposed settlement as set forth in the trustee's notice does not provide for disposition of all issues related to the controversy in that it does not set forth the disposition of title to the real estate involved in this controversy, nor does it provide a description of such

5

  property, nor does it completely resolve the claim which it is intended to settle.

4. That there is a high likelihood of success in litigation of this matter as Marvin Hildreth has agreed to entry of judgment in the amount of $85,000.00 in the Stipulated Dissolution Settlement Agreement dated June 17, 2008.

5. That there is little difficulty in collection of said judgment as the debtor retains an interest in certain real estate of Marvin Hildreth that essentially secures the judgment. Additionally, Mr. Hildreth owns a substantial amount of real estate in addition to that real estate referred to in the trustee's motion.

6. That there would, therefore, be little complexity, expense, inconvenience or delay if litigation was required, notwithstanding that two years have passed since the court rejected the trustee's first proposal and no action has been taken to litigate the matter.

7. That the failure of Marvin Hildreth to pay the judgment due to Janice Hildreth pre-petition was a factor leading to the necessity of filing her petition in this matter. To allow Marvin Hildreth to agree to a judgment, fail to abide by its terms, thereby pushing Janice Hildreth toward bankruptcy, and, in the end, receive the full benefit of his bargain at an immense discount is unjust [and] inequitable.

8. That the trustee in this matter has previously attempted to settle this matter for more than the amount currently proposed and the court rejected that proposal.

9. That the trustee suggests that Marvin Hildreth's financial situation has deteriorated in the two years since the last attempt to settle this matter. A main contention of the trustee and Mr. Hildreth in the prior settlement attempt was that Mr. Hildreth was in dire financial straits and on the verge of bankruptcy, yet no bankruptcy was ever filed to the knowledge of the debtor.

(Obj., ECF Doc. No. 42, at 1–2.)

The Court heard the new Motion to Compromise on April 10, 2012. At the hearing, Trustee presented evidence in support of his motion including seven exhibits and the testimony of Marvin Hildreth. In addition to this evidence,

6

Trustee, Attorney Decker, and Attorney Molstad each made statements to the Court.

Mr. Hildreth is a track foreman for Union Pacific Railroad. He also owns a number of rental properties and runs a six acre campground on the banks of the Missouri River. In 2011, when the Missouri river flooded for a good part of the summer, part of the campground was covered in ten feet or more of water. Mr. Hildreth testified that the flood destroyed the sewer/septic system, waterlines, and electric. The flood also affected the trees, killing the growth on the lower part of the property. The campground has approximately 30 campsites. Mr. Hildreth testified that of these 30 sites, only ten were not significantly damaged. Last year he only had 4 of the 10 units rented. The main attraction at the campground has been boating. Mr. Hildreth testified the flood destroyed the boat ramp at the campground, which made the campground less popular.

In Exhibit 7, Mr. Hildreth provided an estimate of $220,565.26, plus labor, to fix the campground. In addition to replacing items, Mr. Hildreth also testified that the river sand that covers his property would need to be removed. In some places on the campground he has 11 feet of sand, in other places between 4 and 5 feet of sand, and in a few places only a couple of inches of sand. He also testified that his neighbor has a cement wall and that even if he removed the sand from his property, sand would keep blowing onto the campground from his neighbor's

7

property. Before the flood, he estimated the property to be worth approximately $40,000.00 if it were sold as farmland. He does not believe it has any farm value now because it is full of sand. He estimates the current value to be around $10,000.00.

In addition to the campground, Mr. Hildreth also owns eight rental units in Mondamin, Iowa. Approximately 400 people live in Mondamin. The 2011 flood also affected the value of these eight rental units. The rental properties were never damaged by water, but they went unoccupied when people were told to evacuate the town.

Mr. Hildreth is current on mortgages and taxes on these properties. He has kept approximately half of the units rented but has had trouble renting the other half. In part, potential tenants are afraid the town will flood again. Mr. Hildreth tried to sell the properties but interest is low because they are one-bedroom units. Exhibit 6 includes prices he estimates for all the real property.

A number of the properties have mortgages exceeding their estimated value—which Mr. Hildreth placed at $310,000.00. The total secured claims against the properties equal $502,957.00.

In addition to the mortgages, Mr. Hildreth has $8,000.00 in unsecured loans with U.S. Bank, debt resulting from a loan from his brother, and vehicle loans. He admits that under the terms of the divorce agreement with Debtor, he owed yearly

installments of $11,970.00 with a $30,000.00 balloon payment at the end of 2016. No payments have been made. He testified he cannot make the full payment under the divorce agreement but could make the payments under the proposed settlement with the Trustee. He can get a loan because the bank does not want him to file bankruptcy.

     Mr. Hildreth's attorney reiterated the flood totaled out the campground and there is now very little value in the property. He indicated Mr. Hildreth has approximately $80,000.00 in judgment liens against him. He stated that if the Court did not approve this settlement, Mr. Hildreth's only available alternative would be to seek Chapter 13 relief.

     Trustee argued in favor of the settlement for all these reasons, and also agreed that Debtor may not have standing to object to the settlement. Debtor argued she has standing to object. She asserts that if the full amount were recovered, there would be a small surplus after paying the unsecured claims that would be available to her. Debtor argued that there were pieces of property other than the campground that could be liquidated to make the settlement payment. Debtor, however, produced no evidence to show the value of these properties when compared with the properties' encumbrances. In fact, she offered no evidence to support the likelihood of a surplus at all, or that Mr. Hildreth could either pay more or the Trustee could recover more than the proposed settlement amount.

Debtor's argument for a possible surplus is not supported by the numbers. Even assuming Mr. Hildreth made every scheduled payment under the divorce settlement, a total of $113,794.83 would be paid. Claims in the amount of $110,740.74 have been filed in the bankruptcy. Trustee notes his fees would exceed any possible or theoretical surplus and thus Debtor has no basis to object.

## CONCLUSIONS OF LAW AND DISCUSSION

Bankruptcy Rule 9019 provides the standard for reviewing Trustee's Motion for Compromise or Settlement of Controversy:

> (a) Compromise
> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.
> (b) Authority to compromise or settle controversies within classes
> After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies with such class or classes without further hearing or notice.

Fed. R. Bankr. P. 9019. "The bankruptcy court has wide discretion in granting or denying approval of such agreements, and its decision cannot be disturbed on appeal absent clear abuse of discretion." A&A Sign Co. v. Maughan, 419 F.2d 1152, 1155 (9th Cir. 1969).

There are "four criteria for a court to consider when faced with a proposed settlement: '(1) the probability of success in litigation; (2) the likely difficulties in

10

collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.'" In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) (quoting Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)); see Tri-State Financial, LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008) (listing In re Martin factors). "A settlement is not required to constitute 'the best result obtainable.'" Tri-State Financial, LLC, 525 F.3d at 654 (quoting Martin, 212 B.R. at 319). "The standard for evaluation of a settlement 'is whether the settlement is fair and equitable and in the best interests of the estate.'" Id.

> . . . the origin of the four factors can be traced back to a 1929 Eighth Circuit case. Four considerations were listed in Drexel v. Loonis for scrutinizing a compromise in bankruptcy: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views . . . ." 35 F.2d 800, 806 (8th Cir. 1929).

In re Nutraquest, Inc., 434 F.3d 639, 645 (3d Cir. 2006).

> When reviewing the probability of success and the complexity of the litigation, it is unnecessary for the court to conduct a mini-trial on the merits. In re Cajun Elec. Power Co-op, Inc., 119 F.3d 349, 356 (5th Cir. 1997); In re Key3Media Group, Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005). "Rather, the court need only canvass the issues to determine that the settlement does not fall below the lowest point in the range of reasonableness." In re Martin, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997).

11

In re Hefel, No. 10-02787, 2011 WL 4356215, at *2 (Bankr. N.D. Iowa Sept. 19, 2011).

As stated at the hearing, the Court gives weight to Trustee's opinion. One Court summarized how the Trustee's opinion should be considered:

> It is certainly true that two of a Chapter 7 Trustee's primary duties are to liquidate the assets of the estate and close the estate as quickly as reasonably possible. Section 704 of the Bankruptcy Code ("Code") provides:
>
> > "The trustee shall –
> > (1) Collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; . . ."
>
> 11 U.S.C. § 704(1).
>
> Some courts have described the trustee's duty to expeditiously close a Chapter 7 estate as the trustee's "main duty," In re Hutchinson, 5 F.3d 750, 753 (4th Cir. 1993), and his "overriding responsibility," Estes & Hoyt v. Crake (In re Riverside-Linden Investment Co.), 925 F.2d 320, 324 (9th Cir. 1991). If closing a bankruptcy estate as quickly as possible, without regard to the interests of the debtors as well as all creditors and other parties in interest, were the overriding and paramount requirement of the Code, then perhaps AmeriCredit would be correct in its assertions, but the Court does not believe that is the standard by which the trustee's duties are to be measured. . . .
>
> A bankruptcy trustee is a fiduciary of the estate's creditors, and his duty to collect and conserve the assets of the estate and to maximize distribution to creditors is a fiduciary obligation. In re Melenyzer, 140 B.R. 143, 154 (Bankr. W.D. Tex. 1992). It has long been established that the trustee's chief duty is to make an estate's assets available for the benefit of the general creditors' claims. Bunch v. Maloney, 233 F. 967, 969 (8th Cir. 1916), rev'd on other grounds, 246 U.S. 658 (1918). "The trustee is not only an officer of the court but also the representative of all the creditors and has the duty to realize the maximum from the estate for distribution to the creditors."

Commercial Credit Corporation v. Skutt, 341 F.2d 177, 181 (8th Cir. 1965); In re Benny, 29 B.R. 754, 760 (N.D. Cal. 1983); Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996).

The bankruptcy court in Melenyzer recognized these conflicts in a trustee's duties:

> On the one hand, the trustee has a duty to close the estate as expeditiously as is compatible with the best interests of parties in interest. On the other hand, the trustee must also collect the assets of the estate; investigate the financial affairs of the debtor; and appropriately object to the debtor's discharge, to proofs of claim, or to exemptions.
>
> ******
>
> Balancing these apparently competing duties is all the more difficult because the trustee must make decisions prospectively without the benefit of hindsight, and it is always much harder to guess than to second-guess . . . The standard, after all, is 'reasonable care' and 'due diligence,' not perfection. In re Rigden, 795 F.2d at 730–31. . . .

Melenyzer, 140 B.R. at 143.

In re Cowan, 235 B.R. 922, 924–25 (Bankr. W.D. Mo. 1999).

Here, the dissolution settlement could provide maximum payment of $113,794.83 if every payment were made in full over the course of eight years. The dissolution settlement was filed June 17, 2008, and the final balloon payment is scheduled to be made on June 1, 2016. Four years have passed and no payment under the dissolution settlement has ever been made. Were Trustee to litigate the matter fully, the Court does not believe Trustee would be able to collect the funds currently due—nor would there be any better chance to collect the funds not

13

currently due—three more annual installment payments (plus interest) exceeding $10,000.00 and the final $30,000.00 balloon payment.

When considering the four Martin factors, only one favors Debtor's argument. See In re Nutraquest, Inc., 434 F.3d at 644. The first factor—that Trustee has a high probability of success in litigation—favors the Debtor. The remaining factors weigh in favor of granting the Motion for Compromise. Trustee would likely encounter significant difficulties in attempting to collect the amount owed. While Mr. Hildreth has interests in numerous pieces of real property, a majority of these properties are under water with mortgage debt. The estimated values of these properties are significantly less than when they were originally valued.

While the litigation would not likely be complex, it would be inconvenient and cause increased delay. Creditors have already waited over three years during the bankruptcy. Even accepting Debtor's proposal, and assuming Mr. Hildreth suddenly had the ability to pay, Creditors would have to wait at least four more years to realize the full $113,794.83 payment. Waiting and hoping for full payment is not only unrealistic, it would substantially increase delay and further inconvenience the Trustee and creditors.

It is also important to note, no creditor has objected—only Debtor. The Court is not even convinced Debtor has standing to object. The claims filed

($110,740.74) consume almost the entire amount Debtor would be entitled to under the dissolution settlement ($113,794.83). This does not even take into account Trustee's fees. Trustee's assertion that his fee would take more than any amount that would be left has not been challenged by Debtor. Even if Debtor has standing, she has not presented any evidence to suggest that Mr. Hildreth has the means to pay the full dissolution settlement, or even an amount in excess of the $20,000.00 in the proposed Compromise.

The Court concludes it is in the Creditors' best interest to grant the Motion for Compromise. Given all the factors at play, the Compromise is fair, reasonable and in the best interest of the estate.

**WHEREFORE**, Trustee's Motion for Compromise or Settlement of Controversy Under Rule 9019 with Marvin Hildreth is **GRANTED**.

Dated and Entered:   October 1, 2012

_____
**THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE**